Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000897
26-NOV-2014
08:44 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee,
vs.
CIERRA ANN KAM, Defendant-Appellant

CAAP-12-0000897

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(1DTA-12-00359)

NOVEMBER 26, 2014

NAKAMURA, CHIEF JUDGE, AND FUJISE AND REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Defendant-Appellant Cierra Ann Kam (Kam)[1] was convicted of (1) Operating a Vehicle Under the Influence of an Intoxicant (OVUII), as a repeat offender, and (2) Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant (OVLPSR-OVUII).

---

[1] Although the caption of the notice of appeal and record on appeal refer to the Defendant-Appellant as "Cierra Ann M. Kam," the complaint, the amended complaint, and the bulk of the trial court pleadings refer to the Defendant-Appellant as "Cierra Ann Kam." We will use "Cierra Ann Kam" in referring to Defendant-Appellant.

On appeal, Kam contends that the District Court of the First Circuit (District Court)[2] erred in permitting Plaintiff-Appellee State of Hawai'i (State) to amend the charges against her to allege the required mens rea. Kam relies on a footnote in an unpublished summary disposition order of the Hawai'i Supreme Court, State v. Castro, No. SCWC-30703, 2012 WL 3089722, at *1 n.3 (Hawai'i Jul. 30, 2012). The State concedes error based on the Castro footnote. For several reasons, including that the Castro footnote has been undermined by State v. Davis, 133 Hawai'i 102, 324 P.3d 912 (2014), a more recent Hawai'i Supreme Court published opinion, we conclude that the Castro footnote does not control our decision. We hold that the District Court did not err in permitting the State to amend the charges. We also hold that Kam's contention that the State failed to present sufficient evidence to prove that she had previously been convicted of OVUII, proof that was necessary to support her conviction for OVUII as a repeat offender, is without merit. Accordingly, we affirm Kam's convictions.

BACKGROUND

I.[3]

On January 11, 2012, at about 2:47 a.m., Honolulu Police Department (HPD) Officer Mykle Moya (Officer Moya) observed the car Kam was driving "weaving heavily" on the H-1 Freeway. Officer Moya followed Kam's car and observed it drift back and forth across lane markings and weaving within its lane. Officer Moya effected a traffic stop of Kam's car. Upon approaching Kam, Officer Moya noticed that Kam's eyes were red, bloodshot, and glassy, that there was a very strong odor of alcohol on her breath, and that her speech was slurred.

---

[2] The Honorable David W. Lo presided.

[3] The information set forth in this section is taken from police reports and other exhibits that were stipulated into evidence at trial.

Officer Moya asked Kam for her driver's license and vehicle documents. Kam stated that she did not have a license and provided Officer Moya with vehicle documents.

Kam participated in field sobriety tests conducted by Officer Moya. Kam performed poorly. On the horizontal gaze nystagmus test, Officer Moya noted that in both eyes, Kam showed a lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees, and that she also showed circular sway. On the walk and turn test, Officer Moya noted that Kam lost her balance five times during the instruction stage, and that during the walking stage, Kam stopped walking, missed heel-toe, stepped off line, and raised her arms multiple times. On the one leg stand test, Officer Moya observed that Kam swayed and raised her arms throughout the test, put her foot down once, counted the number 3 twice, and skipped number 19.

Kam agreed to participate in a preliminary alcohol screening test, which she "failed." Kam was placed under arrest and taken to the police station, where she agreed to take a breath test. The breath test administered by an Intoxilyzer operator showed that Kam had a breath alcohol concentration of 0.173 grams of alcohol per 210 liters of breath, which is above the legal limit.

A Case Detail Report for District Court "Case ID: 1DTA-11-02742 -- State v. Cierra A M Kam" shows that on October 21, 2011, "Cierra A M Kam" pleaded no contest to OVUII under Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and (a)(3) and that the plea was accepted by the District Court. The Case Detail Report further shows that sentence was imposed and that a "Judgment and Notice" was entered on October 21, 2012. A traffic abstract for "Kam, Cierra Ann M" shows that her driver's license was administratively revoked, pursuant to HRS Chapter 291E, part III, from July 17, 2011 to July 16, 2012.

3

II.

On January 19, 2012, the State charged Kam by complaint with: (1) OVUII, as a repeat offender who committed the charged OVUII offense within five years of a prior conviction for OVUII, in violation of HRS § 291E-61(a)(1) and/or (a)(3) and (b)(2) (Supp. 2013);[4] and (2) OVLPSR-OVUII, as a first offender, in

---

[4] HRS § 291E-61(a)(1), (a)(3), and (b)(2) provide:

(a)   A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]

(3)   With .08 or more grams of alcohol per two hundred ten liters of breath[.]

(b)   A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced without possibility of probation or suspension of sentence as follows:

. . .

(2)   For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E-4(a):

(A)   Revocation for not less than eighteen months nor more than two years of license and privilege to operate a vehicle during the revocation period and installation during the revocation period of an ignition interlock device on any vehicle operated by the person;

(B)   Either one of the following:

(i)   Not less than two hundred forty hours of community service work; or

(ii)   Not less than five days but not more than thirty days of imprisonment, of which at least forty-eight hours shall be served consecutively;

(C)   A fine of not less than $500 but not more than $1,500;

(D)   A surcharge of $25 to be deposited into the neurotrauma special fund; and

(E)   A surcharge of up to $50 if the court so orders, to be deposited into the trauma system special fund[.]

4

violation of HRS 291E-62(a)(1) and/or (a)(2) and (b)(1) (Supp. 2013).[5] The complaint alleged that Kam committed the OVUII and OVLPSR-OVUII offenses on or about January 11, 2012. The complaint, however, failed to allege the required mens rea of "intentionally, knowingly, or recklessly" with respect to the OVLPSR-OVUII offense or the HRS § 291E-61(a)(1) portion of the OVUII offense.

On April 12, 2012, after the State had filed its complaint against Kam, the Hawai'i Supreme Court decided State v. Nesmith, 127 Hawai'i 48, 276 P.3d 617 (2012). Kevin K. Nesmith (Nesmith) and Chris F. Yamamoto (Yamamoto) had each been charged

---

[5] HRS § 291E-62(a)(1), (a)(2), and (b)(1) provide:

(a)    No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to this section or to part III or section 291E-61 or 291E-61.5, or to part VII or part XIV of chapter 286 or section 200-81, 291-4, 291-4.4, 291-4.5, or 291-7 as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:

(1)    In violation of any restrictions placed on the person's license; [or]

(2)    While the person's license or privilege to operate a vehicle remains suspended or revoked[.]

. . . .

(b)    Any person convicted of violating this section shall be sentenced as follows without possibility of probation or suspension of sentence:

(1)    For a first offense, or any offense not preceded within a five-year period by conviction for an offense under this section, section 291E-66, or section 291-4.5 as that section was in effect on December 31, 2001:

(A)    A term of imprisonment of not less than three consecutive days but not more than thirty days;

(B)    A fine of not less than $250 but not more than $1,000;

(C)    Revocation of license and privilege to operate a vehicle for an additional year; and

(D)    Loss of the privilege to operate a vehicle equipped with an ignition interlock device, if applicable[.]

with OVUII, in violation of HRS § 291E-61(a)(1) and/or (a)(3). Id. at 50-51, 276 P.3d at 619-20.[6] In Nesmith, the supreme court held that the portion of Nesmith's OVUII charge and Yamamoto's OVUII charge that alleged a violation of HRS § 291E-61(a)(1) was defective because it failed to allege the required "intentionally, knowingly, or recklessly" mens rea. Id. at 54, 56, 61, 276 P.3d at 623, 625, 630. The supreme court also held that an OVUII charge under HRS § 291E-61(a)(3) "is an absolute liability offense for which mens rea need not be alleged or proven." Id. at 50, 276 P.3d at 619.

On April 20, 2012, in light of Nesmith, the State filed a motion to amend its complaint to allege the required "intentionally, knowingly, or recklessly" mens rea for the OVLPSR-OVUII offense and the HRS § 291E-61(a)(1) portion of the OVUII offense. In its motion to amend, the State set forth the language of its proposed amended complaint and highlighted where it planned to insert the "intentionally, knowingly, or recklessly" mens rea. On June 29, 2012, Kam filed a memorandum in opposition to the State's motion. Kam did not contend that she would suffer any prejudice if the State were allowed to amend the complaint. Instead, she argued that the defect in the charges for failing to allege the required mens rea was a jurisdictional defect that required either dismissal of the complaint or limiting the State to proceeding on the HRS § 291E-61(a)(3) portion of the OVUII charge alone.

On July 5, 2012, at a hearing held prior to trial, the District Court granted the State's motion to amend the complaint, and it denied Kam's request to dismiss the complaint. The State served the Amended Complaint, which alleged that Kam had acted "intentionally, knowingly, or recklessly" in committing the charged OVLPSR-OVUII offense and in committing the HRS § 291E-61(a)(1) portion of the charged OVUII offense. Kam acknowledged

_____

[6] In Nesmith, the Hawai'i Supreme Court consolidated the separate certiorari applications filed by Nesmith and Yamamoto for disposition. Nesmith, 127 Hawai'i at 50, 276 P.3d 617.

receipt of the Amended Complaint and pleaded not guilty to the Amended Complaint.

The parties agreed to proceed with a trial on stipulated evidence. The parties stipulated into evidence State's Exhibits 1 through 6, consisting of the following:

Exhibit 1: Notice of Administrative Review Decision for Respondent "Cierra Kam" regarding an arrest dated June 16, 2011, and Arrest Report No. 11-216656.

Exhibit 2: Copy of Hawai'i State Identification Card for "Kam, Cierra Ann"; a vehicle Insurance Identification Card; and a Certificate of Motor Vehicle Registration.

Exhibit 3: Notice of Administrative Revocation for Respondent "Kam, Cierra A. M." for an arrest dated June 16, 2011, and Arrest Report No. 11-216-656.

Exhibit 4: Case Detail Report for District Court "Case ID: 1DTA-11-02742 -- State v. Cierra A M Kam" certified by a District Court clerk.

Exhibit 5: Traffic abstract for "Kam, Cierra Ann M" certified by a District Court clerk.

Exhibit 6: Reports prepared by Honolulu Police Department Officers regarding the arrest of "Kam, Cierra Ann" on January 11, 2012, under Arrest Report No. 12-013341.

The parties also stipulated "as to identification and venue" and that "the driver's license and . . . date of birth of the documents" that were admitted in evidence matched before the information on the documents was "blacked out." Based on the stipulated evidence, the District Court found Kam guilty as charged of (1) OVLPSR-OVUII and (2) OVUII under both HRS § 291E-61(a)(1) and (a)(3), as a repeat offender under HRS § 291E-61(b)(2).

The District Court sentenced Kam on the repeat-offender OVUII charge to five days in jail, a fine of $700, substance abuse assessment and treatment if necessary, revocation of her driver's license for eighteen months, and various surcharges and fees. It sentenced Kam on the OVLPSR-OVUII charge to five days

7

in jail, a $500 fine, revocation of her driver's license for one year, and a surcharge and fees. The jail terms and license revocation periods were imposed to be served concurrently. The District Court entered its Judgment on September 28, 2012, and this appeal followed.

## DISCUSSION

### I.

The State charged Kam by complaint with OVUII as a repeat offender and with OVLPSR-OVUII. The State moved pre-trial to amend the complaint, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 7(f) (2011), to allege the required mens rea for the OVLPSR-OVUII charge and the HRS § 291E-61(a)(1) portion of the OVUII charge. HRPP Rule 7(f)(1) provides:

> (1) The court may permit a charge other than an indictment to be amended at any time before trial commences if substantial rights of the defendant are not prejudiced.

The District Court, over Kam's objection, granted the State's motion.

### A.

Kam argues that the District Court erred in permitting the State to amend the complaint. In support of this argument, Kam relies on a footnote in the Hawai'i Supreme Court's unpublished Castro summary disposition order (SDO). The footnote in Castro states:

> The State has proposed amending pending HRS § 291E-61(a)(1) charges pursuant to Hawai'i Rules of Penal Procedure Rule 7(f)(1) post-Nesmith, but Nesmith makes it clear that the remedy for the deficient HRS § 291E-61(a)(1) charges is dismissal without prejudice.

Castro, No. SCWC-30703, 2012 WL 3089722, at *1 n.3.

For the following reasons, we conclude that the footnote in the unpublished Castro SDO does not control our decision in this case.

First, Castro is an unpublished decision and therefore does not establish precedent. Hawai'i Rules of Appellate

8

Procedure Rule 35(c)(2) (2010) ("Memorandum opinions and unpublished dispositional orders are not precedent[.]").

Second, the footnote in Castro relies on Nesmith. However, in Nesmith, the OVUII charges against Nesmith and Yamamoto had not been amended, and the issue of whether the HRS § 291E-61(a)(1) portion of their charges (which was defective for failing to allege the requisite mens rea) could have been amended was not raised or directly addressed in Nesmith. Moreover, in Nesmith, the supreme court did not order the dismissal of the defective HRS § 291E-61(a)(1) portion of the charges. Instead, the court affirmed Nesmith's OVUII conviction and Yamamoto's OVUII conviction because they had each been charged with violating both HRS § 291E-61(a)(1) and HRS § 291E-61(a)(3), and the supreme court found that the HRS § 291E-61(a)(3) portion of their charges was valid. Nesmith, 127 Hawai'i at 61, 276 P.3d at 630. The Castro footnote does not specifically explain why Nesmith would preclude the State from amending an HRS § 291E-61(a)(1) charge to allege the required mens rea.

Third, to the extent that the Castro footnote is based on a theory that a defect in a charge for failing to allege the requisite mens rea is jurisdictional in nature, see State v. Cummings, 101 Hawai'i 139, 142-45, 63 P.3d 1109, 1112-15 (2003), that theory has been undermined by the supreme court's more recent published opinion in Davis, 133 Hawai'i 102, 324 P.3d 912. Similar to Kam, Davis was charged with OVLPSR-OVUII, in violation of HRS § 291E-62(a)(1) and/or (a)(2). Davis, 133 Hawai'i at 104, 324 P.3d at 914. Davis's charge was defective because it failed to allege the requisite mens rea. Id. at 110, 324 P.3d at 920. Instead of directing that the charge be dismissed without prejudice because the charge was defective, the supreme court held that it was required to address Davis's challenge to his conviction based on his express claim of insufficient evidence. Id. at 104, 120, 123; 324 P.3d at 914, 930, 933.

The holding in Davis is inconsistent with the theory that a defect in a charge for failing to allege the requisite

9

mens rea is jurisdictional in nature.  If the defect in Davis's charge was a substantive jurisdictional defect such that the trial court lacked subject matter jurisdiction to preside over Davis's case, then the supreme court could not evaluate Davis's sufficiency of the evidence claim.  Justice Acoba, in his concurring opinion in Davis, confirmed this analysis by stating: "If an insufficient charge constituted a jurisdictional defect, then this court could not evaluate whether sufficient evidence existed before the trial court inasmuch as it would not have jurisdiction over the merits of the case."  Id. at 123 n.2, 324 P.3d at 933 n.2 (Acoba, J., concurring).  Based on Davis, we conclude that there is no jurisdictional impediment that served to prevent the District Court from permitting the State to amend Kam's charges to allege the requisite mens rea.[7]

B.

For the foregoing reasons, we decline to follow the footnote in the unpublished Castro SDO, and we instead conclude that the District Court was free to apply HRPP Rule 7(f)(1) in deciding the State's motion to amend the complaint against Kam.[8]

---

[7] In Cummings, the supreme court concluded that the failure of a charge to state an essential element of the offense was a jurisdictional defect. Cummings, 101 Hawai'i at 142-45, 63 P.3d at 1112-15.  The supreme court's analysis in Nesmith raised the question of whether non-element deficiencies in a charge, such as the omission of the requisite mens rea, were viewed as jurisdictional.  See Nesmith, 127 Hawai'i at 66, 276 P.3d at 635 (Acoba, J., concurring and dissenting) (reading the majority opinion as concluding "that a state of mind is a 'fact' that must be included in an HRS § 291E-61(a)(1) charge for due process purposes only, but not an element of HRS § 291E-61(a)(1) that must be included in a charge for purposes of jurisdiction." (brackets omitted)).  Davis makes clear that a charge defective for failing to allege the requisite mens rea, such as the charges in Kam's original complaint, does not deprive the court of jurisdiction over the merits of the case.  Davis's articulation of its holding as requiring that express claims of insufficiency of the evidence be addressed in cases where there is a "defective charge" or "charging error," see Davis, 133 Hawai'i at 104, 120, 123; 324 P.3d at 914, 930, also indicates that the supreme court may no longer consider a charge defective for failing to allege an essential element to constitute a jurisdictional defect.

[8] As noted, the State conceded error based on the Castro footnote. However, the State filed its answering brief before the supreme court's decision in Davis.  Moreover, the State's concession of error is not binding on an appellate court.  State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000).

10

Under HRPP Rule 7(f)(1), the District Court had the discretion to permit the State to amend the charges in the complaint before trial "if substantial rights of the defendant are not prejudiced." Here, Kam does not claim that her substantial rights were prejudiced by the State's amendment of the OVLPSR-OVUII charge and the HRS § 291E-61(a)(1) portion of the OVUII charge before trial to allege the required mens rea.

It has long been established law that in order to convict a defendant of OVLPSR-OVUII, the State was required to prove the defendant acted with an intentional, knowing, or reckless mens rea. See State v. Vliet, 95 Hawai'i 94, 99, 19 P.3d 42, 47 (2001) (holding that an intentional, knowing, or reckless mens rea applies to HRS § 291-4.5, the predecessor to HRS § 291E-62); State v. Lioen, 106 Hawai'i 123, 130, 102 P.3d 367, 374 (App. 2004); State v. Young, 107 Hawai'i 36, 38, 109 P.3d 677, 679 (2005) (holding that HRS § 291E-62 substantially reenacted HRS § 291-4.5). In addition, the Hawai'i Supreme Court's decision in Nesmith made clear that an "intentional, knowing, or reckless" mens rea was required to be charged and proved to establish OVUII under HRS § 291E-61(a)(1). Nesmith, 127 Hawai'i at 54, 56, 61, 276 P.3d at 623, 625, 630.

Kam was represented by counsel during the District Court proceedings. Citing Nesmith, the State filed its motion to amend the complaint to allege the required mens rea almost eleven weeks before trial. The State's motion set forth the proposed amended complaint and highlighted where it planned to insert the required mens rea. Thus, Kam had ample time to prepare any defense relevant to the amended mens rea aspect of the charges. Kam did not seek a continuance after the District Court granted the State's motion to amend. Instead, Kam advised the District Court that the parties had agreed to proceed with a trial on stipulated evidence.

It would appear that HRPP Rule 7(f)(1) was promulgated to address the precise situation presented by this case -- the correction of a charging error prior to trial, where the

11

amendment to the charges does not prejudice the defendant's substantial rights.  Where the State's pre-trial amendment of a charge in a complaint does not prejudice a defendant's substantial rights, there seems to be little justification for denying the amendment and good reasons for granting it. Permitting the amendment prevents delay, avoids inconvenience to the parties, and conserves judicial resources.  In this case, permitting the State to amend the charges served to prevent the delay, inconvenience, and waste of judicial resources that would have resulted if the State had been required to seek dismissal of the charges and start the case over again by re-charging Kam. The State's amendment of the charges did not affect Kam's ability to prepare her defense and it did not prejudice her substantial rights.  Other jurisdictions allow the prosecution to amend its charge where the defendant's substantial rights are not prejudiced.  E.g., State v. Erickson, 852 So. 2d 289, 291 (Fla. Dist. Ct. App. 2003); State v. O'Brien, 508 N.E.2d 144, 146-49 (Ohio 1987); State v. Gosser, 656 P.2d 514, 518 (Wash. Ct. App. 1982); State v. Schaffer, 845 P.2d 281, 283-85 (Wash. 1993); State v. Bluhm, 460 N.W.2d 22, 23-24 (Minn. 1990).  We conclude that the District Court did not err in permitting the State to amend before trial the OVLPSR-OVUII charge and the HRS § 291E-61(a)(1) portion of the OVUII charge to allege the requisite mens rea.

II.

Kam contends that her conviction for OVUII as a repeat offender must be vacated because the evidence adduced at trial was insufficient to show that she had been convicted of OVUII within five years of the OVUII offense charged in this case.  In particular, Kam argues that there was insufficient evidence to show that she was previously convicted of OVUII because: (1) the State failed to introduce a judgment of conviction for the prior OVUII conviction; and (2) the State failed to show that Kam was the person convicted in the prior OVUII case.  We disagree with Kam's arguments.

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State. State v. Ildefonso, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Hoe, 122 Hawai'i 347, 349, 226 P.3d 517, 519 (App. 2010) (block quote format altered; citation omitted). "Matters of credibility and the weight of the evidence and the inferences to be drawn are for the fact finder." State v. Romano, 114 Hawai'i 1, 8, 155 P.3d 1102, 1109 (2007). "[A]ppellate courts will give due deference to the right of the trier of fact to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced." State v. Agard, 113 Hawai'i 321, 324, 151 P.3d 802, 805 (2007) (internal quotation marks and citation omitted).

### A.

Kam argues that in order to prove a prior conviction, the State was required to introduce a judgment that complied with the requirements of HRPP Rule 32(c)(2) (2012).[2] Kam's argument is without merit.

Kam confuses the requirements for a judgment of conviction with what is necessary to prove a prior conviction. HRS § 706-666(2) (1993) provides that a "[p]rior conviction may be proved by any evidence, including fingerprint records made in

---

[2] HRPP Rule 32(c)(2) provides:

(c) Judgments.

. . . .

(2) IN THE DISTRICT COURT. A judgment of conviction in the district court shall set forth the disposition of the proceedings and the same shall be entered on the record of the court. The filing of the written judgment, or in the event of oral judgment, the filing of the written notice of entry of judgment, in the office of the clerk constitutes entry of judgment. The judgment or notice of entry shall be signed by the judge or by the clerk, if the judge so directs.

13

connection with arrest, conviction, or imprisonment, that reasonably satisfies the court that the defendant was convicted." In State v. Nishi, 9 Haw. App. 516, 525-27, 852 P.2d 476, 481-82 (1993), we rejected the argument that a certified copy of the judgment was necessary to prove a prior conviction. Nishi argued that "the State was required to submit a 'certified copy of the judgment,' rather than a certified copy of a traffic abstract" in order to prove a prior conviction for driving without insurance. Nishi, 9 Haw. App. at 525, 852 P.2d at 481. In rejecting this argument, we held that a certified copy of the judgment was not the only way to prove a prior conviction, and we further held that "a certified copy of a person's traffic abstract is satisfactory evidence to establish his prior [traffic conviction]." Id. at 526-27, 852 P.2d at 481-82. In support of our conclusion, we quoted HRS § 706-666(2). Id. at 526, 852 P.2d at 481.

Here, the State introduced the "Case Detail Report" for District Court "Case ID: 1DTA-11-02742 -- State v. Cierra A M Kam," certified by a District Court clerk, which shows that the District Court accepted the no contest plea of "Cierra A M Kam" to the charge of OVUII under HRS § 291E-61(a)(1), (a)(3), and (b)(1) on October 21, 2011; that the defendant was sentenced; and that a "Judgment and Notice" was filed in the District Court on October 21, 2011. The State also introduced a traffic abstract for "Kam, Cierra Ann M," certified by a District Court clerk, that also showed the same information reflected in the Case Detail Report regarding the entry of a no contest plea, sentencing, and entry of a "Judgment and Notice" for Case ID: 1DTA-11-02742. We conclude that the State presented sufficient evidence to show that "Cierra A M Kam" was convicted of OVUII on October 21, 2011 in Case ID: 1DTA-11-02742.

B.

We further conclude that the State introduced sufficient evidence to show that the "Cierra A M Kam" with the prior OVUII conviction in Case ID: 1DTA-11-02742 was the same

14

person charged with OVUII in this case. Kam stipulated "as to identification" in this case, which we take to mean that she admitted to being the person who was arrested and charged with OVUII in this case.[10/] She also stipulated that "the driver's license and . . . date of birth of the documents" that were admitted in evidence matched before the information on the documents was "blacked out."

The exhibits introduced by the State show that Kam (the person charged in this case) is the same person with the prior October 21, 2011, OVUII conviction in Case ID: 1DTA-11-02742. The traffic abstract for "Kam, Cierra Ann M" not only identifies the subject of the traffic abstract by name, but also by a party ID and date of birth. The traffic abstract contains the Case ID for the charges against Kam underlying this case (Case ID: 1DTA-12-00359) and the prior OVUII conviction (Case ID: 1DTA-11-02742).

In addition, there are numerous matches between the police reports (Exhibit 6), which pertain to the charges against Kam in this case, and the Notice of Administrative Review Decision (Exhibit 1) and Notice of Administrative Revocation (Exhibit 3), which pertain to the OVUII arrest underlying the prior OVUII conviction. The police reports pertaining to the charges against Kam in this case identify the person arrested as "Kam Cierra, Ann" and show her residence address, date of birth, and the last four digits of her social security number. The Notice of Administrative Review Decision and Notice of Administrative Revocation identify the respondent as "Cierra Kam" and "Kam, Cierra A. M.," respectively, and both reflect the same

_____

[10/] In addition, the State introduced police reports relating to the charges in this case, which identify the person arrested as "Kam, Cierra, Ann" and include the arrestee's date of birth, sex, and physical description. It also introduced the Hawai'i State Identification card for "Kam, Cierra Ann," which contains a photograph and information regarding, date of birth, sex, and physical description that matches (except for hair color) the physical description in the police report. Kam was present in court for trial, and the District Court was therefore able to compare Kam's physical appearance with the photograph and information in the Hawai'i State Identification card as well as the information in the police reports.

residence address, date of birth, and last four digits of the social security number as shown in Kam's police reports (Exhibit 6). Moreover, the police reports contain Kam's distinctive handwritten signature, and Exhibits 1 and 3 also contain the handwritten signature of the named "respondent." The signatures contained in all three exhibits are very similar in appearance.

In sum, the State's evidence showed that a person with the same name, residence address, date of birth, and last four digits of the social security number as Kam, with a similar appearing signature as Kam, and whose prior traffic convictions were included in Kam's traffic abstract, was previously convicted of OVUII in Case 1DTA-11-02742. We conclude that there was sufficient evidence to show that Kam was the person previously convicted of OVUII in Case 1DTA-11-02742. See Davis, 133 Hawai'i at 122, 324 P.3d at 932 (concluding that evidence of matching name, date of birth, and last four digits of social security number was sufficient to show that the defendant was the previously convicted individual).

CONCLUSION

For the foregoing reasons, we affirm the District Court's Judgment.

On the briefs:

Titiimaea N. Ta'ase
Deputy Public Defender
for Defendant-Appellant

Brandon H. Ito
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee